**WAUKESHA ENGINE DIVISION, A DIVISION OF DRESSER INDUSTRIES, INC., Plaintiff,**

v.

**The DEPARTMENT OF INDUSTRY, LABOR AND HUMAN RELATIONS OF the STATE OF WISCONSIN, and Howard S. Bellman, in his official capacity as Secretary of the Department of Industry, Labor and Human Relations of the State of Wisconsin, and Merry F. Tryon, in her official capacity as Administrator, Equal Rights Division, of the Department of Industry, Labor and Human Relations of the State of Wisconsin, Defendants.**

No. 85–C–286.

United States District Court,
W.D. Wisconsin.

Oct. 11, 1985.

Michael H. Auen, of Foley & Lardner, Madison, Wis., for plaintiff.

David C. Rice, Asst. Atty. Gen., Madison, Wis., for defendants.

SHABAZ, District Judge.

Plaintiff, Waukesha Engine Division, contends that the prohibition against involuntary retirement set forth in Wisconsin Statute § 111.33(2)(b) (1983–84) is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461; the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 141–187; and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634. The plaintiff seeks a declaratory judgment, pursuant to 28 U.S.C. §§ 2201–02, that Wis.Stat. § 111.33(2)(b) conflicts with the Federal Statutes mentioned above. The plaintiff also asks that defendant, The Department of Industry, Labor and Human Relations of the State of Wisconsin, be enjoined from enforcing the provisions against involuntary retirement set forth in Wis.Stat. § 111.33(2)(b).

This action is before the Court on plaintiff's motion for summary judgment. Plaintiff and defendant have agreed on a joint stipulation of facts. Therefore, there is no genuine issue as to any material fact in the case and the case is appropriate for summary judgment.

### Facts

Dresser Industries, Inc. is a diversified, publicly held corporation. Plaintiff Waukesha Engine Division is a division of Dresser Industries, Inc. Waukesha Engine Division has major sales offices in four states and five countries, and manufacturing facilities in two states. One of those manufacturing facilities is located in Waukesha, Wisconsin.

Defendant The Department of Industry, Labor and Human Relations of the State of Wisconsin ("the department"), administers the Wisconsin Fair Employment Act ("WFEA"). Defendant Howard S. Bellman, Secretary of the Department, has overall responsibility for all aspects of the Department's operations, including administration of the WFEA. Defendant Merry F. Tryon, Administrator of the Equal

Rights Division of the Department, has primary responsibility for supervising and administering cases brought under WFEA.

Plaintiff employs approximately 890 persons in its Waukesha, Wisconsin facility. Approximately 500 of these persons are hourly employees; the remainder are paid by salary. Plaintiff's hourly employees at its Waukesha facility are represented for collective bargaining purposes by District 10, International Association of Machinists and Aerospace Workers, AFL–CIO ("the Union"). The Union has negotiated about the hourly employees' wages, hours, and other terms and conditions of their employment with management at the Waukesha, Wisconsin facility since 1939. In 1947, management of the Waukesha, Wisconsin facility created a pension benefit plan for the hourly, as well as the salaried, employees. The normal retirement date in that plan was age 65. In 1955, the plan was amended to allow employees to work beyond age 65 if the employees obtained management's consent to do so. In 1957, management and the Union agreed during their negotiations to incorporate by reference the terms of the pension plan into their collective bargaining agreement. The terms of the pension plan have been incorporated by reference into every subsequent labor agreement as well. In 1963, management and the Union also agreed to include the age 65 mandatory retirement date of the pension plan in the collective bargaining agreement. The parties further agreed to remove from the pension plan and omit from the collective bargaining agreement the provision which previously allowed hourly employees to work beyond the mandatory retirement date with management's consent. In 1973, the parties agreed that hourly employees would be allowed to work beyond the mandatory retirement date to age 66, provided that management consented and no other employees capable of doing the work were on layoff. In 1979, plaintiff and Union changed the mandatory retirement terms in the collective bargaining agreement and the pension plan to comply with the 1978 amendments to the Age Discrimination in Employment Act (ADEA), 29

U.S.C. §§ 621–634. Thus, any employee reaching age 65 on or after January 1, 1979 could not be involuntarily retired before age 70.

The parties' most recent collective bargaining agreement, effective October 16, 1984, contains mandatory retirement provisions identical to those contained in the 1979 agreement. The current agreement provides, in pertinent part, that:

> The Normal Retirement Date for this Plan is the last day of the calendar month during which you reach age sixty-five (65). Prior to January 1, 1979, retirement was mandatory immediately upon reaching your Normal Retirement Date, unless continuation of employment past that date was approved by the Company, but not beyond attainment of age sixty-six (66). If an employee reaches age sixty-five (65) on or after January 1, 1979, however, mandatory retirement on account of age is deferred until age seventy (70) in keeping with the 1978 amendments to the Age Discrimination in Employment Act.
>
> . . . .
>
> Retirement shall be mandatory on the last day of the calendar month during which the employee reached the seventieth (70) birthday.

The plan provides that employees working past their normal retirement dates will receive no Benefit Accrual Service or Participation Service for such time. However, the plan continues to provide such persons with pension benefits calculated by the benefit level in effect at the time of their actual retirement.

The current collective bargaining agreement incorporates the terms of the current pension plan as well. The current pension plan similarly provides that retirement will "be automatic upon a Participant attaining Age 70."

Since 1957, plaintiff and the Union have also agreed that certain group insurance benefits (e.g., hospital, life, and medical) would be provided to active and retired hourly employees. The current group in-

surance plans for active and retired hourly employees are referred to in the collective bargaining agreement. Plaintiff provides different group insurance benefits to active and retired employees. For example, hourly retirees at Waukesha do not receive permanent and total disability insurance, vision care expense benefits, or comprehensive dental expense benefits. Furthermore, retired employees and their dependents do not receive major medical expense benefits while they are eligible for Medicare.

The group insurance plans for active and retired hourly employees also refer to, and are interrelated with, the hourly pension plan. For example, the active employee plan provides that a person loses his eligibility for group life insurance if he does not retire pursuant to the pension plan. Similarly, the retiree plans make retirement pursuant to the pension plan a condition of eligibility for retiree group insurance benefits.

Plaintiff also employs some 390 salaried employees at its Waukesha, Wisconsin facility. Plaintiff regularly transfers salaried employees between the Waukesha, Wisconsin facility and locations outside of Wisconsin in the ordinary course of its business. In addition, some salaried employees who report to management at the Waukesha, Wisconsin facility work and reside outside of Wisconsin.

The 390 salaried employees at plaintiff's Waukesha, Wisconsin facility also receive pension benefits—through the Dresser Retirement Income Plan (DRIP). The DRIP covers over 11,250 salaried employees working in 43 states and the District of Columbia, as well as approximately 4000 retirees and other beneficiaries. The present DRIP first became effective May 1, 1983. Plaintiff has amended the DRIP several times. When plaintiff last amended the DRIP, the latest effective date stated therein was May 16, 1985.

The DRIP states that the Normal Retirement Date for salaried employees is age 65 and further provides that:

As to periods prior to January 1, 1979, employment beyond Normal Retirement must have been specifically approved by the Company. As to periods commencing on or after January 1, 1979, employment beyond Age 70 is prohibited. Provided that a Participant's employment shall be terminated as of the date (prior to Age 70, but not earlier than Age 65) that such Participant (1) has been employed in an executive or high policy making capacity with the Employer for at least the two consecutive years immediately preceding the termination date; and (2) is entitled or eligible to receive in the aggregate from all defined benefit and all defined contribution plans maintained by the Employer (exclusive of benefits provided for by employee contributions) annual benefits equal in value to a single life annuity without ancillary benefits of at least $27,000.

As with its hourly plan, plaintiff added this provision to comply with the 1978 amendments to the ADEA. Plaintiff is in the process of amending the DRIP to comply with § 802(c)(1) of the Older Americans Act Amendments of 1984, Pub.L. 98–459, that raises the minimum benefit level for retirement of *bona fide* executives or high policymakers to $44,000. Plaintiff presently is administering the plan by those increased terms.

The salaried persons plaintiff employs at Waukesha also participate in the company's standard group insurance plans, which cover approximately 10,000 employees nationwide. These plans were last amended January 1, 1985, and became effective as amended on that date. Plaintiff provides different group insurance benefits to active salaried employees and retired salaried employees. For example, accidental death and dismemberment insurance and dental benefits completely terminate at retirement. Similarly, long-term disability benefits terminated at age 70. Life insurance benefits are substantially reduced at retirement. Moreover, plaintiff assumes only secondary responsibility for the medical and hospital benefits of its salaried retirees. The group insurance plan for active

and retired salaried employees refers to, and is interrelated with, the DRIP. For example, disability benefits are not payable once a person is retired pursuant to DRIP. Similarly, persons are eligible for group retiree insurance benefits as retirees only if they terminate after age 55 with at least nine years of service as determined under the provisions of the DRIP.

The pension and group insurance plans contained in both the pension plan and collective bargaining agreement for hourly and salaried employees, active or retired, are "employee benefit plans" within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1002(1)–(3). Furthermore, the United States Internal Revenue Service has approved these plans as meeting the requirements of its rules and regulation. Plaintiff is a fiduciary of the plans. The group insurance benefits that plaintiff provides to its salaried, hourly, and retired employees (with the exception of life and accidental death and dismemberment benefits) are provided under and pursuant to a self-insured plan. That plan is an employee "welfare benefit plan" within the meaning of ERISA, 29 U.S.C. § 1002(1). Persons covered by these pension and insurance plans receive substantial benefits from them, and none of the plans are subterfuges to evade the purposes of any age discrimination law. Furthermore, as noted above, plaintiff has consistently amended the plans to comply with the changing requirements of the ADEA.

Prior to September 1, 1984, WFEA contained provisions parallel to those of the ADEA. That is, employers in Wisconsin were entitled to involuntarily retire, pursuant to a *bona fide* employee benefit plan, any hourly or salaried employee reaching age 70. Also, employers were entitled to involuntarily retire certain *bona fide* executives or high policymakers between the ages 65–69. On September 1, 1984, however, the State of Wisconsin amended the WFEA. As amended, § 111.33 of WFEA prohibits employers from making employment decisions turn on a person's age—if age 40 or over. Furthermore, as amended,

§ 111.33 prohibits any retirement plan or system from requiring or permitting the involuntary retirement of any individual age 40 or over because of that individual's age. The 1984 amendments also expressly repeal the earlier WFEA provision which allowed Wisconsin employers involuntarily to retire certain *bona fide* executives and high policymakers between the ages of 65–69.

The amended WFEA became effective immediately for retirement and insurance plans incorporated in collective bargaining agreements negotiated after September 1, 1984. The current collective bargaining agreement between plaintiff and the Union was negotiated after September 1, 1984 and became effective October 16, 1984. Therefore, the amended WFEA is applicable to the retirement and insurance plans for hourly employees incorporated in that collective bargaining agreement. The amended WFEA includes a two-year grace period, ending September 1, 1986, for non-collectively bargained retirement and insurance plans in existence on September 1, 1984. For all other retirement and insurance plans, the amended law was applicable as of its effective date—September 1, 1984. The DRIP and group insurance plans provided to plaintiff's salaried employees have amendments which became effective after the September 1, 1984 date.

The amended WFEA renders the mandatory retirement provisions contained in both the pension plan and collective bargaining agreement for hourly employees unlawful on their face. Plaintiff and the Union are prohibited from implementing the mandatory retirement provisions and from including such provisions in their agreements in the future. The amended WFEA has or will render the mandatory retirement provision in the DRIP unlawful on its face. WFEA prohibits plaintiff from involuntary retiring any salaried employee, even though that employee lawfully could be retired if he was working in another state. WFEA also prohibits plaintiff from involuntarily retiring *bona fide* executives and high policymakers in Wisconsin, even

though it lawfully could do so in other states.

The amended WFEA will also result in higher costs for the employee benefit plans. An hourly retiree's pension benefits are calculated according to the benefit level in effect at retirement. Because the amended Wisconsin law prohibits involuntary retirement of employees at a designated age, the monthly benefit due to hourly employees who retire after age 70 will be higher. Also, persons who otherwise would be required at a certain age to seek their group insurance benefits from plaintiff's retiree insurance plans can continue to seek such benefits from the plans created for active employees. As a consequence, the active employee insurance plans cover an expanded population and the cost of maintaining and administering those plans is raised to plaintiff.

Several of plaintiff's employees, hourly and salaried, are nearing their mandatory retirement dates. One of the hourly employees, T.A. Findley, turned 70 on April 19, 1985. He told plaintiff that, in light of the WFEA amendments, he intends to continue working. If plaintiff were involuntarily to retire Findley or any other employee after their seventieth birthday, it could be prosecuted under the amended WFEA. If plaintiff does not involuntarily retire Findley or any other employee after their seventieth birthday, it will unilaterally have changed the terms of its collective bargaining agreement and pension/insurance plans.

### Discussion of Law

This case involves an actual and real controversy between the parties over the enforceability of Wis.Stat. § 111.33(2)(b) and is appropriately brought under 28 U.S.C. § 2201. The Court has jurisdiction of this action under 28 U.S.C. § 1331, and under 29 U.S.C. § 1132.

The Wisconsin Fair Employment Act ("WFEA") prohibits employment discrimination based on age against individuals forty-years of age or older. Wis.Stat. §§ 111.321, 111.33 (1983–84). It is not employment discrimination because of age "[t]o

implement the provisions of any retirement plan or system of any employer if the retirement plan or system is not a subterfuge to evade the purposes of ... [the Wisconsin Fair Employment Law]." However, "[n]o plan or system may excuse the failure to hire, or require or permit the involuntary retirement of, any individual ... because of that individual's age." Wis.Stat. § 111.33(2)(b).

Plaintiff contends that the prohibition against involuntary retirement set forth in Wis.Stat. § 111.33(2)(b) is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461; the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 141–187; and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634.

■ In deciding whether a federal law preempts a state statute, the Court must determine Congress' intent in enacting the federal law at issue. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490 (1983). "Pre-emption may be either express or implied, and 'is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.' *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 [97 S.Ct. 1305, 1309, 51 L.Ed.2d 604] (1977)." *Shaw*, 463 U.S. at 95, 103 S.Ct. at 2899.

The Court will address the issue of whether ERISA preempts Wis.Stat. § 111.33(2)(b) first. ERISA subjects to federal regulation employee pension and welfare plans. Congress explicitly provided, in section 514(a) of ERISA, 29 U.S.C. § 1144(a), that ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. The United States Supreme Court has recently construed the phrase "relates to" in *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). According to the Court, "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a

plan." *Shaw,* 463 U.S. at 96–97, 103 S.Ct. at 2900. The Court went on to say:

Congress used the words "relate to" in § 514(a) in their broad sense. To interpret § 514(a) to preempt only state laws specifically designed to affect employee benefit plans would be to ignore the remainder of § 514.... Nor, given the legislative history, can § 514(a) be interpreted to preempt only state laws dealing with the subject matters covered by ERISA—reporting, disclosure, fiduciary responsibility, and the like. The bill that became ERISA originally contained a limited pre-emption clause, applicable only to state laws relating to the specific subjects covered by ERISA. The Conference Committee rejected these provisions in favor of the present language, and indicated that the section's pre-emptive scope was as broad as its language.

*Shaw,* 463 U.S. at 98, 103 S.Ct. at 2900–01. Based upon its broad interpretation of the clause "relate to," the Supreme Court in *Shaw* held that the New York Human Rights Law, which forbid discrimination in employee benefit plans on the basis of pregnancy, was preempted by ERISA to the extent it prohibited practices that were lawful under federal law.

In *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), the United States Supreme Court held that ERISA preempted a New Jersey statute that did not allow employers to reduce a retiree's pension benefit by an amount equal to the retiree's workers' compensation award. The Court stated: "It is of no moment that New Jersey intrudes indirectly through a worker's compensation law, rather than directly, through a statute called 'pension regulation.' ERISA makes clear that even indirect state action bearing on private pensions may encroach upon the area of exclusive federal concern." *Alessi,* 451 U.S. at 525, 101 S.Ct. at 1907.

Other cases in which state statutes have similarly fallen prey to ERISA's broad pre-emption are: *Stone & Webster Engineering Corp. v. Ilsley,* 690 F.2d 323 (2d Cir. 1982), *aff'd,* 463 U.S. 1220, 103 S.Ct. 3564,

77 L.Ed.2d 1405 (1983) (preempting Connecticut statute that required employers to provide certain health and life insurance benefits to injured workers); *Champion International Corp. v. Brown,* 731 F.2d 1406 (9th Cir.1984) (preempting provisions of Montana's age discrimination law that required service accrual for employees working after age 65); *General Motors Corp. v. California State Board of Equalization,* 600 F.Supp. 76 (C.D.Cal.1984) (preempting California insurance franchise tax as applied to ERISA plan); *Council of Hawaii Hotels v. Agsalud,* 594 F.Supp. 449 (D.Hawaii 1984) (preempting Hawaii law requiring employers to provide prepaid health benefits for employees), *Davis v. Line Construction Benefit Fund,* 589 F.Supp. 146 (W.D.Mo.1984) (preempting Missouri subrogation rules as applied to ERISA plan).

Other state statutes and actions, however, which "affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan," have survived an ERISA preemption challenge. *Savings & Profit Sharing Fund of Sears Employees v. Gago,* 717 F.2d 1038, 1040 (7th Cir.1983). Cases in which the Court held that state action was not preempted by ERISA are: *Savings & Profit Sharing Fund of Sears Employees v. Gago,* 717 F.2d 1038 (7th Cir.1983) (Wisconsin law governing property settlements pursuant to divorce not preempted); *American Telephone & Telegraph Co. v. Merry,* 592 F.2d 118 (2d Cir.1979) (Connecticut court order garnishing pension plan to fulfill alimony and support obligation not preempted by ERISA); *Lane v. Goren,* 743 F.2d 1337 (9th Cir.1984) (California statute prohibiting discrimination in hiring, promotion and salary not preempted by ERISA); and *Rebaldo v. Cuomo,* 749 F.2d 133 (2d Cir.1984) (New York law that prohibited hospitals from establishing in-patient charges for self-insured employee benefit plans other than as authorized by statute not preempted by ERISA).

The Court concludes that Wis.Stat. § 111.33(2)(b) does "relate to" an employee benefit plan covered by ERISA. Wis.Stat. § 111.33(2)(b) "has a connection with or reference to such an [employee benefit] plan." The involuntary termination provision of Wis.Stat. § 111.33(2)(b) specifically applies to a retirement plan or system of any employer. In addition, the involuntary termination provisions of the Wisconsin statute control what terms may be included in an employee benefit plan. Under the Wisconsin statute, an employee benefit plan could not contain a mandatory termination provision for employees 70 years old or older or for bona fide executives between the ages of 65 and 70. Such terms would otherwise be lawful under federal law. Clearly, the effect that Wis.Stat. § 111.33(2)(b) has on employee benefit plans covered by ERISA is not too tenuous, remote, or peripheral to warrant a finding that the law "relates to" an employee benefit plan.

The Court's conclusion that Wis.Stat. § 111.33(2)(b) "relates to" employee benefit plans is supported by case law. The Court of Appeals for the Seventh Circuit and the Wisconsin Court of Appeals have both held that the Wisconsin Fair Employment Act's general nondiscrimination provisions "relate to" ERISA plans. *See Bucyrus-Erie Co. v. Department of Industry, Labor & Human Relations,* 599 F.2d 205, 208–210 (7th Cir.1979), *cert. denied,* 444 U.S. 1031, 100 S.Ct. 701, 62 L.Ed.2d 667 (1980); *Goodyear Tire & Rubber Co. v. Department of Industry, Labor & Human Relations,* 87 Wis.2d 56, 72–73, 273 N.W.2d 786, 793–795 (Ct.App.1978). If the general nondiscrimination provisions of the Wisconsin Fair Employment Act "relate to" ERISA plans, the more specific involuntary retirement prohibition of Wis.Stat. § 111.33(2)(b) must also.

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. Wisconsin Statute § 111.33(2)(b) does relate to employee benefit plans covered by ERISA. Accordingly, Wis.Stat. § 111.33(2)(b) is preempted by ERISA to the extent that Wis.Stat. § 111.-33(2)(b) applies to employee benefit plans covered by ERISA.

Plaintiff asks the Court to declare, pursuant to 28 U.S.C. § 2201–02, that Wis. Stat. § 111.33(2)(b) is invalid as applied to plaintiff's collective bargaining agreement and pension/insurance plans. The plaintiff also asks the Court to enjoin defendants from compelling, or attempting to compel, plaintiff to abandon, adjust or alter the involuntary retirement provisions found in its collective bargaining agreement and pension/insurance plans.

Since Wis.Stat. § 111.33(2)(b) is preempted by ERISA to the extent that Wis.Stat. § 111.33(2)(b) applies to employee benefit plans covered by ERISA, Wis.Stat. § 111.-33(2)(b) is invalid as applied to plaintiff's collective bargaining agreement and pension/insurance plans if the collective bargaining agreement and pension/insurance plans are employee benefit plans covered by ERISA. The parties have stipulated that the pension and group insurance plans contained in both the pension plan and collective bargaining agreement for hourly and salaried employees, active or retired, are "employee benefit plans" within the meaning of ERISA. The parties have also stipulated that the group insurance benefits that plaintiff provides to its salaried, hourly, and retired employees are provided under and pursuant to a self-insured plan that is an employee "welfare benefit plan" within the meaning of ERISA. Based upon these stipulated facts, the Court concludes that Wis.Stat. § 111.33(2)(b) is invalid as applied to the plaintiff's pension and group insurance plans contained in both the pension plans and collective bargaining agreement for hourly and salaried employees.

■ The Court finds that declaratory relief pursuant to 28 U.S.C. § 2201–03 is appropriate. The Court declares that Wis. Stat. § 111.33(2)(b) is preempted by ERISA to the extent that § 111.33(2)(b) applies to an employee benefit plan covered by ERISA. More specifically, the Court declares that Wis.Stat. § 111.33(2)(b) is invalid as applied to plaintiff's pension and group in-

surance plans contained in both the pension plans and collective bargaining agreement for hourly and salaried employees.

The Court also finds that injunctive relief is appropriate. Accordingly, the Court enjoins the defendant, their agents, successors, and employees from compelling or attempting to compel, plaintiff to abandon, adjust, or alter the involuntary retirement provision found in its collective bargaining agreement and pension plans to the extent that such involuntary retirement provision is consistent with federal law.

Since the Court has found that Wis.Stat. § 111.33(2)(b) is preempted by ERISA to the extent that it applies to an employee benefit plan covered by ERISA and has granted plaintiff its requested relief, the Court will not address the issue of whether Wis.Stat. § 111.33(2)(b) is preempted by the LMRA or the ADEA.

■ Plaintiff also requests its costs and attorney's fees in this action pursuant to 29 U.S.C. § 1132(g). Under 29 U.S.C. § 1132(g)(1), the Court may in its discretion allow reasonable attorney's fees and costs of action in any action under ERISA by a participant, beneficiary, or fiduciary. This action is an action under ERISA brought by plaintiff as fiduciary.

*Bittner v. Sadoff & Rudoy Industries,* 728 F.2d 820 (7th Cir.1984) sets forth two tests a district judge could use to evaluate a fee request under 29 U.S.C. § 1132(g)(1). The first test, that consists of five-factors, generally applies in situations where a plaintiff employee asks for attorney's fees after successfully alleging an employer's violation of ERISA. The five factors are:

(1) the degree of the offending parties' culpability or bad faith; (2) the degree of the ability of the offending parties to satisfy personally an award of attorneys' fees; (3) whether or not an award of attorneys' fees against the offending parties would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' positions.

*Bittner,* 728 F.2d at 828. This test, however, provides little guidance in determining whether attorneys fees and costs should be awarded where an action seeks to invalidate a state statute, because the importance of factors such as bad faith, deterrence and personal finances are minimized.

A more appropriate test to determine whether attorney's fees should be awarded in an action seeking to invalidate a state statute is the second test which allows a prevailing party attorney's fees unless the losing party's position was substantially justified or unless some special circumstance makes such an award unjust. *Bittner,* 728 F.2d at 830. Under the circumstances of this case, the Court finds that an award granting attorney's fees to the plaintiff would be unjust. Plaintiff requested and received a declaratory judgment to the effect that Wis.Stat. § 111.33(2)(b) is unconstitutional as applied to its ERISA plans, and an injunction to prevent the defendant from enforcing the provisions of Wis.Stat. § 111.33(2)(b). Plaintiff requested no monetary damages. Defendant, on the other hand is a state agency that was given the responsibility of enforcing a state law that was preempted to the extent it conflicted with ERISA. There was no evidence that the state acted in bad faith in passing the law. Where plaintiff suffered no monetary damages, and where defendant did not act in bad faith, special circumstances indicate that an award of attorney's fees to the plaintiff would be unjust. Therefore, the Court, in its discretion, denies plaintiff's request for attorney's fees and costs.

## ORDER

IT IS ORDERED that plaintiff's motion for summary judgment is granted and a declaratory judgment and permanent injunction in plaintiff's favor shall be entered accordingly. Plaintiff's request for attorney's fees and costs is denied.