We accordingly reverse and remand for a new trial.

AMERICAN MEDICAL SECURITY, INC., Client First Brokerage Services, Inc., Moran, Inc., Trio Metal Products Company, Inc., and United Wisconsin Life Insurance Company, Plaintiffs,

v.

Steven B. LARSEN, Commissioner, Maryland Insurance Administration, Defendant.

Civil No. H–95–1463.

United States District Court, D. Maryland.

Dec. 7, 1998.

Edward J. Birrane, Jr. and Cynthia M. Dietz, Towson, MD, for Plaintiffs.

Andrew H. Baida, Assistant Attorney General, Baltimore, MD, for Defendant.

ALEXANDER HARVEY, II, Senior District Judge.

Previously in this civil action, plaintiffs successfully challenged a regulation promulgated by the Maryland Insurance Commissioner. The parties have now returned to court and dispute whether the successful plaintiffs are entitled to recover attorneys' fees and costs. What this Court must now decide is whether plaintiffs, as prevailing parties in this suit brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.,* are entitled to an award of attorneys' fees and expenses under 29 U.S.C. § 1132(g) and to an award of costs under Rule 54(d)(1), F.R.Civ.P.

In an earlier ruling in this case, this Court granted plaintiffs' motion for summary judgment on the ground that ERISA preempted the Maryland insurance regulation at issue. *American Medical Sec., Inc. v. Bartlett,* 915 F.Supp. 740 (D.Md.1996). The Fourth Circuit affirmed the Court's ruling, 111 F.3d 358 (4th Cir.1997), and the Supreme Court denied certiorari, *Larsen v. American Medical Sec., Inc.,* —— U.S. ——, 118 S.Ct. 2340, 141 L.Ed.2d 711 (1998). Plaintiffs have now moved for awards of attorneys' fees, expenses and costs.[1] The parties have submitted detailed memoranda and exhibits, and a hearing has been held in open court. For the reasons stated herein, this Court concludes that plaintiffs are not under ERISA entitled to an award of attorneys' fees and expenses. Plaintiffs are, however, entitled to recover their reasonable costs under Rule 54(d)(1).

I

*Background*

This suit involves the regulation of "stop-loss" insurance, which is a form of reinsurance typically purchased by small employers with self-funded health insurance plans to ensure against catastrophic losses. Each stop-loss policy has an attachment point. Benefit payments are made by the individual

---

1. Plaintiffs have filed an Amended Motion for Attorneys' Fees and an Amended Bill of Costs. The parties have agreed that the Court rather than the Clerk should tax costs in this case. *See* 28 U.S.C. § 1920.

plan up to the attachment point while the insurer pays any additional amounts.

Plaintiffs Client First Brokerage Services, Inc., Moran, Inc., and Trio Metal Products, Inc. (the "Plaintiff Plan Sponsors") are small Maryland corporations with self-funded health insurance plans administered by plaintiff American Medical Security, Inc. ("AMS").[2] These plans purchased stop-loss insurance coverage from plaintiff United Wisconsin Life Insurance Company ("United Wisconsin").

In 1994, Maryland law required that insurance companies selling all types of insurance policies to Maryland residents obtain prior approval for their policies from the Maryland Insurance Commissioner (the "Commissioner"). Md.Code Ann. art. 48A, §§ 242, 375 (1957). In the fall of 1994, AMS asked United Wisconsin to file its stop-loss insurance policies for the Plaintiff Plan Sponsors with the Maryland Insurance Administration (the "MIA"). The MIA refused to approve the policies based on an informal guideline which prohibited the approval of stop-loss insurance policies with attachment points of less than $25,000 per person or $1.25 million aggregate per year.[3]

The MIA guideline was designed to prevent small employers from using stop-loss insurance to circumvent the requirements that Maryland imposed on health insurance policies. Under Maryland law, health insurance policies sold to employers with between two and fifty employees must provide a broad range of minimum benefits. *See* former COMAR §§ 09.31.05.01–11.[4] Maryland law does not impose the same requirements on self-funded insurance plans with low attachment points, even though such policies may operate much the same as regular health insurance plans, with the stop-loss point serving as a deductible. The MIA guideline sought to partially close this perceived loophole in state health insurance law.

After the MIA refused to approve the stop-loss policies of the Plaintiff Plan Sponsors, the plaintiffs filed this suit against the Commissioner, asserting in Count One that ERISA preempts state regulation of stop-loss insurance issued to self-funded plans; in Count Two, that ERISA preempts state regulation of stop-loss attachment points; and in Count Three, that the Commissioner's actions exceeded his authority under state law.

Several weeks after plaintiffs filed this suit, the Commissioner promulgated a new regulation which essentially codified the previous, unwritten guideline. The new regulation (the "Regulation") required a minimum attachment point of $20,000 per person or an aggregate attachment point of at least 115% of expected claims for all participants. COMAR § 09.31.02. Under the Regulation, stop-loss policies with attachment points below those mandated by the Regulation were treated as standard health insurance policies and were required to provide the same minimum benefits. Public outcry over the Regulation led the Commissioner to revise it, reducing the minimum attachment point to $10,000. The Commissioner justified the new attachment point as a reasonable compromise which was low enough that it would not unduly burden employers, but high enough that it would prevent employers from circumventing state insurance requirements by purchasing substandard health insurance disguised as stop-loss insurance.

Plaintiffs' motion for summary judgment challenged both the original guideline and the subsequently promulgated Regulation. In its Opinion of February 23, 1996, this Court granted plaintiffs' motion for summary judgment as to Counts One and Two, holding that under provisions of ERISA the State of Maryland could not regulate self-funded benefit plans by mandating minimum attachment points for stop-loss insurance. *Bartlett*, 915 F.Supp. at 746. Plaintiffs agreed to a stipulation of dismissal of Count Three without

---

**2.** AMS is one of the largest administrators of self-funded health insurance plans in the United States.

**3.** These attachment points could be reduced on a case-by-case basis at an employer's request.

**4.** That regulation is now COMAR §§ 31.11.06.01–03.

prejudice.[5] After the Fourth Circuit affirmed, the Commissioner unsuccessfully petitioned the Supreme Court to grant a writ of certiorari. *Larsen,* —— U.S. ——, 118 S.Ct. 2340, 141 L.Ed.2d 711.

Prior to the filing of this suit, AMS had volunteered to pay all legal fees and costs on behalf of all plaintiffs. AMS now seeks an award of $323,355.03, representing fees and expenses incurred by plaintiffs in litigating these matters. In addition, in its Amended Bill of Costs, AMS seeks an award of $18,-028.42.

## II

### Principles of Law

ERISA provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party" in a suit brought by a participant, beneficiary or fiduciary. 29 U.S.C. § 1132(g)(1). As the Fourth Circuit has noted, the statute thus "places the determination of whether attorneys' fees should be awarded in an ERISA action completely within the discretion of the district court." *Quesinberry v. Life Ins. Co. of North America,* 987 F.2d 1017, 1028 (4th Cir.1993) (*en banc* ).

■ The Fourth Circuit has held that, in evaluating a request for attorneys' fees in an ERISA case, a district court should apply the five factor test prevalent in most other Circuits. This Court must therefore consider:

(1) [the] degree of opposing parties' culpability or bad faith;

(2) [the] ability of opposing parties to satisfy an award of attorneys' fees;

(3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;

(4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and

(5) the relative merits of the parties' positions.

*Reinking v. Philadelphia American Life Ins. Co.,* 910 F.2d 1210, 1217–18 (4th Cir.1990), *overruled in part* by *Quesinberry,* 987 F.2d at 1028–30; *Wheeler v. Dynamic Engineering, Inc.,* 62 F.3d 634 (4th Cir.1995). "These five factors are meant as general guidelines and not as a rigid test." *Id.* at 641. Thus, no one of these or other factors may be decisive. *Quesinberry,* 987 F.2d at 1029. These factors simply constitute the nucleus of an inquiry which seeks to identify that "unusual case" in which the judge may shift fees to further the policies of ERISA. *Id.*

## III

### Attorneys' Fees

■ Application of the *Reinking* test to the facts of this case leads this Court to conclude that plaintiffs are not entitled here to an award of attorneys' fees. This is not the "unusual" case in which the Court should shift to defendant the responsibility for paying attorneys' fees incurred by plaintiffs in this litigation.

■ In contrast to the fee shifting rule prevalent in civil rights cases under 42 U.S.C. § 1988, there is no presumption in an ERISA case that a successful plaintiff is entitled to attorneys' fees and expenses. *Quesinberry,* 987 F.2d 1017, 1028–29; *Custer v. Pan American Life Ins. Co.,* 12 F.3d 410, 422 (4th Cir.1993). Only unusual circumstances justify such an award in an ERISA case. *Custer,* 12 F.3d at 422. On the record in this case, this Court concludes that plaintiffs have not met their burden of showing that the circumstances here are such that defendant should be ordered to pay plaintiffs' attorneys' fees.

The first *Reinking* factor favors the defendant. Although the Commissioner did not prevail as a matter of law, the Court concludes that he did not act culpably or in bad faith. Indeed, the Court is satisfied that the Commissioner, in promulgating the Regulation and in defending this lawsuit, acted at all times in good faith. Nothing in the record

---

**5.** In its Opinion, this Court declined to rule on plaintiffs' request for attorneys' fees and costs but directed the plaintiffs to file an appropriate motion under Local Rule 109.2. *Id.* at 746–47.

indicates that the Commissioner believed that he lacked authority to regulate stop-loss insurance. Indeed, the Commissioner had the statutory obligation to enforce the requirements of Maryland health insurance law. *See* Md.Ins.Code Ann. § 2–108 (1997). Since the Commissioner reasonably perceived the sale of stop-loss insurance with low attachment points to be an effort to circumvent Maryland's mandatory insurance requirements, it was appropriate for him to pursue policies designed to restrict or eliminate those practices. As the Fourth Circuit remarked in its Opinion in this case, "[t]he state's fear that plans will circumvent state regulation and offer citizens too few health benefits is understandable." *Bartlett*, 111 F.3d at 364.

■ The second *Reinking* factor favors neither the plaintiffs nor the defendant. While the State of Maryland has sufficient resources to pay an award of attorneys' fees, the Court must consider the ability of *both* parties to pay an award and not attempt merely to determine which party has the greatest resources. *See Reinking*, 910 F.2d at 1218 (district court should, *inter alia*, consider whether an award of fees "would place a substantial hardship on the [plaintiffs]"). This is not a case in which the plaintiffs possessed merely moderate means. AMS agreed at the outset to pay all of plaintiffs' attorneys' fees. AMS clearly has the resources to do so, inasmuch as it is one of the largest administrators of self-funded plans in the United States. Presumably, AMS would not have volunteered from the outset of the litigation to bear litigation costs had it not been able to do so. Since both sides in this case had the ability to satisfy an award of attorneys' fees, the second *Reinking* factor does not support plaintiffs' request for attorneys' fees.

■ In considering the third factor, the Court must consider the effect which an award against the Commissioner would have against others acting in a similar capacity. There is no merit to plaintiffs' contention that imposing an award here would have the salutary effect of discouraging the Commissioner and insurance officials in other states from interfering with ERISA and from attempting to regulate stop-loss insurance. As this Court has determined, defendant did not act culpably, and while bad faith must not necessarily be shown before a court should endorse deterrence, the two factors are closely related:

> The third factor—the deterrent effect of a fee award on other plan administrators—is one that is likely to have more significance in a case where the defendant is highly culpable than in a case such as this one. Honest mistakes are bound to happen from time to time, and fee awards are likely to have the greatest deterrent effect where deliberate misconduct is in the offing.

*Foltice v. Guardsman Products Inc.*, 98 F.3d 933, 937 (6th Cir.1996).

The deterrent effect which a substantial award against defendant would have on insurance officials is hardly a desirable one. In this case, the Court has determined that the Commissioner acted in good faith. He has proceeded at all times in accordance with his broad statutory mandate to enforce the provisions of the Maryland Insurance Code. *See* Md.Ins.Code Ann. § 2–108 (1997). The Commissioner has been granted broad powers of enforcement including "the powers and authority expressly conferred ... by or reasonably implied from this article...." § 2–108(1). The Commissioner has been specifically authorized to adopt regulations to "carry out" provisions of the Insurance Article of the Annotated Code of Maryland. § 1–109(a)(1). In acting as he did, the Commissioner did not in this case, as argued by plaintiffs, violate Maryland law by attempting to regulate stop-loss insurance.

Moreover, evidence does not exist indicating that the Commissioner set out to deliberately circumvent ERISA. On the contrary, the record discloses that the defendant believed at all times that his actions were consistent with federal law. The Fourth Circuit characterized defendant's legal posture as "seek[ing] to take advantage of his right under ERISA's savings clause to regulate the business of insurance." *Bartlett*, 111 F.3d at 362. The Fourth Circuit also noted that the regulation at issue was designed to fill a perceived "loophole" or "regulatory gap." *Id.* at 363, 365.

A substantial award of attorneys' fees in this case would have the effect of deterring state insurance officials from promulgating regulations reasonably designed to protect the health and welfare of citizens of the state. Maryland law at the time required that employee benefit plans offer at least 28 state-mandated health benefits. *Bartlett,* 111 F.3d at 361; COMAR, § 09.31.05. The plans sponsored by the Plaintiff Plan Sponsors contained substantially fewer benefits than the 28 mandated by Maryland law. For example, the benefit plans sponsored by these Maryland employers did not include benefits for skilled nursing facility services, outpatient rehabilitative services and certain organ transplants, all of which must be included in Maryland health insurance policies. *Bartlett,* 111 F.3d at 360. In attempting to regulate these "stop-loss" insurance policies, the Commissioner legitimately sought to confer important additional health benefits on Maryland citizens.

Humanitarian concerns thus support the promulgation by the Maryland Insurance Commissioner of a regulation based on a reasonable, albeit erroneous, interpretation of federal law. Furthermore, this case involved complicated questions of statutory interpretation and federal preemption. Defendant did not engage here in a type of behavior which ERISA's fee-shifting provisions would logically seek to deter, namely the negligent enforcement of or the wilful violation of clear ERISA standards. *Cf. Armistead v. Vernitron Corp.,* 944 F.2d 1287, 1304 (6th Cir.1991) (refusing to award attorneys' fees in an ERISA case where "we are offered no reason for pursuing a policy of deterrence beyond that which we in effect always pursue when we hold an employer in breach of contract"). This Court accordingly concludes that the third factor favors the defendant.

The fourth *Reinking* factor also does not provide significant support for plaintiffs' position. The fourth factor considers whether the successful suit was designed to "benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question involving ERISA itself." *Reinking,* 910 F.2d at 1218. The plaintiffs' success in this lawsuit benefitted ERISA participants only to the extent that an administrator like AMS and an insurer like United Wisconsin will in the future be able to provide a certain type of stop-loss insurance to companies in Maryland. Whether this in fact benefits all employees covered by the plans is an open question. Plaintiffs have argued that it does, because workers otherwise might not receive any benefits. Defendant has argued that it does not, because stop-loss insurance allows companies to provide workers with less coverage than Maryland law would normally allow. Evidence of record in this case does not conclusively answer this question.

Although this case did resolve a novel legal issue involving ERISA, the Court is not convinced that the legal question at issue was "significant" enough to warrant an award of attorneys' fees to plaintiffs. A unique question of statutory interpretation was undoubtedly presented. However, in denying defendant's petition seeking a writ of certiorari, the Supreme Court apparently did not believe that the legal question involved was a significant one. Rather, the Supreme Court appears to have agreed with the position taken by the Solicitor General of the United States, namely, that questions pertaining to an interpretation of state law predominated in this case.

Plaintiffs argue that the fifth factor, which relates to the relative merits of the parties' positions, clearly weighs in their favor. However, the Court must consider more than who won and who lost on the merits. As the Fourth Circuit held in *Custer,* a party who prevails does not, by prevailing alone, establish a presumption of entitlement to an award of fees. 12 F.3d at 422. *See also Eddy v. Colonial Life Ins. Co. of America,* 59 F.3d 201, 207, n. 12 (D.C.Cir. 1995) (observing that "it would be unreasonable to consider a factor that inevitably points the same way in every case."). The ultimate decision in this case was not one which could be summarily reached. An extended discussion of the tension between ERISA and Maryland's regulatory efforts was required both by this Court's Opinion and by that of the Fourth Circuit. The Fourth Circuit repeatedly noted the "compli-

cations" and "difficulty" which arose when it became necessary to apply the second and third factors of *Metropolitan Life Insurance Company v. Com. of Massachusetts,* 471 U.S. 724, 743, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) to the circumstances here. *Bartlett,* 111 F.3d at 363.

On this record, this Court concludes that the position taken by defendants in this litigation had sufficient merit that an award of attorneys' fees would be inappropriate. The Fourth Circuit has characterized the Regulation as a "carefully drafted" response to an "understandable fear" that self-funded plans would exploit a "loophole" and avoid Maryland health insurance requirements. *See Bartlett,* 111 F.3d at 363–64. As noted by the Solicitor General in his amicus brief filed with the Supreme Court, "even if petitioner intended his regulation to affect the behavior of ERISA plans, he has pursued that goal only 'indirectly through regulation of [a plan's] insurer and its insurer's insurance contracts'—an approach that ERISA specifically allows."

In sum, the Court, in applying the five factor *Reinking* test in this case, has concluded that plaintiffs are not under the circumstances here entitled to an award of attorneys' fees and expenses under § 1132(g). On this record, plaintiffs have not shown that this is the unusual case in which the Court should shift to defendant the responsibility for paying plaintiffs' attorneys fees.

The Court finds support for its decision not to award attorneys' fees in *Waukesha Engine Division v. Department of Industry, Labor and Human Relations,* 619 F.Supp. 1310 (D.Wis.1985),[6] an opinion which addressed a request for attorneys' fees by a prevailing plaintiff in a similar ERISA preemption case. That court rejected the request, observing that "[t]here was no evidence that the state acted in bad faith in passing the law" and concluded that "where plaintiff suffered no monetary damages, and where defendant did not act in bad faith . . .

an award of attorneys' fees would be unjust." *Id.* at 1318. Similarly, this Court has concluded here that the State acted at all times in good faith and that it would consequently be unjust to require the defendant to pay the substantial attorneys' fees claimed by the plaintiffs.[7]

## IV

### Costs

■ Plaintiffs also seek an award of $18,028.42 as costs, pursuant to Rule 54(d)(1), F.R.Civ.P. In opposing that request, defendant argues that the Court should exercise its discretion under Rule 54(d)(1) and refuse to award any costs at all because the case was a difficult one and because the Commissioner acted in good faith. Alternatively, defendant contends that any award of costs should for various reasons be limited to the amount of $2,815.08.

■ Rule 54(d)(1) of the Federal Rules of Civil Procedure provides that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the Court otherwise directs . . . ." The Rule gives rise to a presumption in favor of an award of costs to the prevailing party. *Teague v. Bakker,* 35 F.3d 978, 996 (4th Cir.1994), *cert. denied,* 513 U.S. 1153, 115 S.Ct. 1107, 130 L.Ed.2d 1073 (1995).

One of the leading cases in this District and this Circuit concerning an award of costs to a prevailing party under Rule 54(d)(1) and 28 U.S.C. § 1920 is *Advance Business Systems & Supply Co. v. SCM Corporation,* 287 F.Supp. 143 (D.Md.1968), *aff'd. as modified,* 415 F.2d 55 (4th Cir.1969), *cert. denied* 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 101 (1970). *See also Charter Med. Corp. v. Cardin,* 127 F.R.D. 111 (D.Md.1989). In *Advance Business Systems,* Chief Judge Thomsen of this Court, in making an award of costs, recognized that a trial court possesses broad discretionary powers in the allowance or disal-

---

6. The *Waukesha* court considered but did not apply the five factor test which the Fourth Circuit has adopted.

7. Since the Court has concluded that plaintiffs are not entitled to an award of attorneys' fees in

any amount, there is no need to consider defendant's alternative argument that the amount claimed by plaintiffs should for various reasons be substantially

lowance of costs within the categories set out in § 1920. 287 F.Supp. at 162. Costs of copying documents may be recoverable where the copies are necessary for pretrial, the trial or the appeal. *Id.* at 164.

On the record here, this Court must reject defendant's contention that no costs at all should be awarded. The Court is satisfied that an award of reasonable costs is appropriate in this case. Plaintiffs were the prevailing parties and in the absence of unusual circumstances are entitled "as of course" to recover their reasonable costs. Defendant has shown no "good reason" why this Court should not award any costs at all to the plaintiffs as the prevailing parties. *Teague,* 35 F.3d at 996.

Defendant has argued in the alternative that various items claimed as costs should be disallowed under Rule 54 and 28 U.S.C. § 1920. Defendant contends (1) that the Court's award should be reduced by $2,855.70 representing copying fees incurred at the district court level, (2) that plaintiffs should not be reimbursed for the $2,630.15 claimed as the cost of printing briefs filed in the Supreme Court, (3) that plaintiffs should not be reimbursed for $726.21 claimed as copying costs incurred in connection with defendant's appeal, (4) that plaintiffs should not recover $8,782.82 claimed as the cost of computer-assisted research, and (5) that any award should be reduced by $220 representing the cost of the transcript of the hearing held in open court on January 25, 1996.

 As to the particulars of plaintiffs' Amended Bill of Costs, the Court will sustain only one of defendant's objections. As this Court held *Grinnell Corp. v. Road Sprinkler Fitters Local Union No. 669,* Civ. No. H–94–3309 (D.Md., Memorandum and Order of May 6, 1998, at 12) and in *Thomas v. Treasury Management Assoc., Inc.,* 158 F.R.D. 364, 372 (D.Md.1994), costs of computerized legal research are not recoverable under Rule 54(d)(1). *See also Haroco, Inc. v. American Nat'l Bank & Trust Co. of Chicago,* 38 F.3d 1429, 1440 (7th Cir.1994). Accordingly, the costs claimed by plaintiffs will be reduced by $8,782.28.

After considering the parties' arguments, the Court is satisfied that all of the other costs claimed by plaintiffs are appropriate. An award of $9,246.14 is not unreasonable given the nature and substantial procedural history of this case. Contrary to defendant's contentions, the language "necessarily obtained for use in this case" in 28 U.S.C. § 1920(2) and (4) requires merely that costs be relevant and reasonable and not that they be indispensable to the final outcome. *See Advance Business Systems,* 287 F.Supp. at 162–165.

## V

### *Conclusion*

For the foregoing reasons, plaintiffs' amended motion for attorneys' fees and expenses will be denied. Pursuant to Rule 54(d)(1), the Court will award plaintiffs costs in the amount of $9,246.14. An appropriate Order will be entered by the Court.