**AMERICAN MEDICAL SECURITY, INC., Client First Brokerage Services, Inc., Moran, Inc., Trio Metal Products Company, Inc., and United Wisconsin Life Insurance Company, Plaintiffs**

v.

**Dwight K. BARTLETT, III, Commissioner, Maryland Insurance Administration, Defendant.**

**Civil No. H–95–1463.**

United States District Court, D. Maryland.

Feb. 23, 1996.

Edward J. Birrane, Jr., Towson, Md., and Andrew Jay Graham and Kramon and Graham, Baltimore, Md., for plaintiffs.

Christina Gerstung Beusch, Assistant Attorney General, Baltimore, Md., for defendant.

ALEXANDER HARVEY, II, Senior District Judge.

In this civil action, the plaintiffs challenge a regulation ("the Regulation") promulgated by defendant Dwight K. Bartlett, III, Commissioner of the Maryland Insurance Administration ("the Commissioner"). The parties have undertaken discovery, and both the plaintiffs and the defendant have filed a motion for summary judgment.

The question of law presented by the pending motions is whether the Regulation, which concerns so-called "stop-loss" insurance issued by insurers to employee benefit plans, is preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.* The five plaintiffs have here filed a three-count complaint, seeking injunctive and declaratory relief. Plaintiffs ask the Court to enter a judgment declaring (1) that ERISA preempts the Commissioner and the State of Maryland from enforcing any regulation or statute, or any decision or action having the effect of law, as respects any stop-loss policy issued to an employee benefit plan covered by ERISA, and (2) that the Commissioner and the State of Maryland are preempted from regulating the so-called attachment points of stop-loss insurance policies.[1] Plaintiffs also seek an award of attorneys' fees and costs.

---

1. In Count Three of their complaint, plaintiffs also seek an injunction and a judgment declaring that defendant's attachment point requirements are unenforceable under Maryland law. Plain-

In support of their motions, the parties have submitted lengthy memoranda and numerous exhibits. A hearing has been held in open court. For the reasons to be stated herein, plaintiffs' motion for summary judgment will be granted, and defendant's motion for summary judgment will be denied. Count Three of the complaint will be dismissed without prejudice.

## I

### *Employee Benefit Plans Under ERISA*

An "employee benefit plan" under ERISA includes a plan established or maintained by an employer to the extent that such plan was established or is maintained for the purpose of providing for its participants or their beneficiaries, medical, surgical, or hospital care or benefits. 29 U.S.C. § 1002(1). A plan may be fully insured, self-insured, self-funded, or a combination thereof. A fully insured plan purchases a group health insurance policy in order to fund its benefits. A self-funded plan pays benefits out of a pool of money collected from the plan's own funds, from employee contributions, or from both. A self-insured plan also pays benefits out of its own funds, but the money comes from the employer's general funds and not from a separate pool.[2]

Self-insured and self-funded plans often purchase so-called "stop-loss" insurance in order to limit the financial risk which the plan might face in the event of catastrophic health care expenses. Stop-loss insurance reimburses the employee benefit plan for claims that exceed a certain agreed-upon amount, the so-called "attachment" point. There are two types of attachment points: specific (or individual) and aggregate. A specific attachment point represents the amount above which the stop-loss carrier must reimburse the plan for eligible claims made by an individual plan participant during the plan year. The specific attachment

point protects the plan against exceptionally high claims made by an individual participant. An aggregate attachment point represents the amount above which the stop-loss carrier must reimburse the plan for all eligible claims during the plan year.[3] The aggregate attachment point protects the plan against the risk of higher than expected total claims made by plan participants.

Stop-loss coverage insures the employee benefit plan, not the individual participants in the plan. *Thompson v. Talquin Bldg. Prods. Co.*, 928 F.2d 649, 653 (4th Cir.1991). Therefore, the purchase of stop-loss insurance does not relieve the plan of its obligation to pay benefits to plan participants, and the stop-loss insurer has no obligation to pay claims of plan participants. *Id.* Moreover, the purchase of stop-loss insurance does not convert a self-funded or self-insured employee benefit plan into a fully insured plan for preemption purposes. *Id.; Tri–State Mach., Inc. v. Nationwide Life Ins. Co.*, 33 F.3d 309, 315 (4th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1175, 130 L.Ed.2d 1128 (1995). For the purposes of ERISA, a plan remains self-funded even though covered by stop-loss insurance. *Id.*

## II

### *Background Facts*

The Regulation at issue in this case was propounded by defendant Dwight K. Bartlett, III, in his official capacity as Insurance Commissioner of the State of Maryland. Plaintiffs are American Medical Security, Inc. ("AMS"), Client First Brokerage Services, Inc. ("Client First"), Moran, Inc. ("Moran"), Trio Metal Products Company, Inc. ("Trio Metals"), and United Wisconsin Life Insurance Company ("UWLIC"). UWLIC is licensed and authorized to engage in the business of life and health insurance in

---

tiffs have not, however, sought summary judgment as to this Count. At the hearing held on the pending motions, counsel for plaintiffs indicated that they would agree to a dismissal without prejudice of Count Three, if their motion for summary judgment were granted as to Counts One and Two.

**2.** For purposes of the pending motions, there is no distinction between a self-funded plan and a self-insured plan.

**3.** The aggregate attachment point is typically expressed as a percentage of total expected claims, but may be a specific dollar amount.

the State of Maryland. UWLIC sells stop-loss coverage to self-funded and self-insured employee benefit plans. AMS is a licensed third-party administrator which processes health benefit claims on behalf of self-funded plans that have purchased stop-loss insurance from UWLIC. Client First, Moran and Trio Metals are Maryland corporations which maintain self-funded plans, and each of these small employers has purchased from UWLIC stop-loss insurance administered by AMS. The specific attachment point of the stop-loss policy issued to Client First is $25,000, the Moran specific attachment point is $3000, and the Trio Metals specific attachment point is $2500.[4]

The stated purposes of the Regulation are to define when stop-loss coverage will be considered to be health insurance, and to establish that the purpose of true stop-loss coverage is to cover catastrophic losses of the policyholder. COMAR § 09.31.02. Essentially, the Regulation defines "stop-loss insurance" by setting out certain requirements for an insurance policy to qualify as such. Among these requirements are that, if a policy contains a specific attachment point, it must be at least $10,000 per participant per year, and that if the policy contains an aggregate attachment point, it must be at least 115% of expected claims for all participants. COMAR § 09.31.02.03B. A stop-loss policy need not contain both types of attachment points, but the attachment point which it does contain must meet the minimum requirements of the Regulation.

A "stop-loss" policy which does not satisfy the minimum requirements of the Regulation is considered to be a standard health insurance policy, required by Maryland law to provide specific benefits.[5] Thus, the Regulation attempts to prevent small employers like Client First, Moran and Trio Metals from avoiding the minimum health insurance coverage required by Maryland law. If a stop-loss policy issued to such an employer contains a low attachment point, then the stop-loss coverage attaches at a very early time, and the stop-loss carrier essentially acts as a typical insurer the obligations of which arise after a specified deductible is satisfied. In this manner, a self-funded or self-insured plan bears very little responsibility for making benefit payments itself, and at the same time it avoids the minimum coverage mandated by Maryland law.[6] As intended, the effect of the Regulation is to force a small employer to either bear more risk by means of the adoption of a higher attachment point, or to abandon self-funding and purchase a health insurance policy which would include state-mandated coverage. Plaintiffs contend that a third option exists, namely that a self-funded plan might decide not to purchase stop-loss insurance, and thereby risk insolvency if forced to pay exceptionally high claims.

## III

### *Discussion*

ERISA in general preempts "any and all State laws" insofar as they "relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). However, a state law "which regulates insurance, banking or securities" is not preempted, pursuant to the so-called "saving clause" of ERISA. 29 U.S.C. § 1144(b)(2)(A). The "saving clause" is in turn limited by the so-called "deemer clause," which provides that no employee benefit plan "shall be deemed to be an insurance company or other insurer ... or to be engaged in the business of insurance ... for purposes of any law of any State purporting to regulate insurance companies [or] insur-

---

**4.** Due to enrollment additions, terminations, and changes, the aggregate attachment point under each policy cannot be calculated until the end of the plan year.

**5.** Under the Maryland Health Insurance Reform Act of 1993, the only health insurance which may be sold to an employer having between two and fifty employees is the Comprehensive Standard Health Benefit Plan established by the Act. Md. Ann.Code art. 48A §§ 698–713. This standard plan contains some 37 required benefits. COMAR §§ 09.31.05.01–.11.

**6.** According to the Commissioner, the current Moran plan provides 9 of the 37 required benefits, and the current Trio Metals plan provides 15 of the 37 required benefits. No analysis of the Client First plan was done because the $25,000 specific attachment point in that policy would satisfy the definition of "stop-loss insurance" in the Regulation.

ance contracts...." 29 U.S.C. § 1144(b)(2)(B). The Supreme Court has explained that ERISA's preemption clause

> establishes as an area of exclusive federal concern the subject of every state law that "relate[s] to" an employee benefit plan governed by ERISA. The saving clause returns to the States the power to enforce those state laws that "regulat[e] insurance," except as provided in the deemer clause. Under the deemer clause, an employee benefit plan governed by ERISA shall not be "deemed" an insurance company, an insurer, or engaged in the business of insurance for purposes of state laws "purporting to regulate" insurance companies or insurance contracts.

*FMC Corp. v. Holliday,* 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). In a number of cases, the Supreme Court has noted the exceptional breadth of preemption under ERISA. *See, e.g., id.; Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47, 107 S.Ct. 1549, 1552–53, 95 L.Ed.2d 39 (1987); *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739, 105 S.Ct. 2380, 2388–89, 85 L.Ed.2d 728 (1985); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983).

(a)

*Does the Regulation "Relate To" an Employee Benefit Plan?*

■ Initially, this Court must determine whether the Regulation "relates to" an employee benefit plan covered by ERISA. A law "relates to" an employee benefit plan if it has a "connection with or reference to" such a plan. *Shaw,* 463 U.S. at 97, 103 S.Ct. at 2900. The Court in this case must therefore first determine whether the Regulation refers to employee benefit plans, or is connected to such plans, and accordingly is subject to preemption under § 1144(a).

■ The Supreme Court has "virtually taken it for granted that state laws which are 'specifically designed to affect employee benefit plans' are pre-empted under [§ 1144(a) ]." *Mackey v. Lanier Collection Agency & Serv., Inc.,* 486 U.S. 825, 829, 108 S.Ct. 2182, 2185, 100 L.Ed.2d 836 (1988). In pertinent part, the Regulation states:

A policy or contract issued to an employer may be considered to be a policy or contract of stop-loss health insurance coverage only if:

> (1) The stop-loss coverage is issued to and insures the sponsor or administrator of the plan or the plan itself and is not issued to employees, dependents, members, or participants;

> (2) The carrier is liable for payment only to the sponsor or administrator of the plan or the plan itself and not to the employees, dependents, members, subscribers, participants, or providers....

From its review of this portion of the Regulation, this Court concludes that the quoted language appears to be "specifically designed to affect employee benefit plans," especially in light of the Commissioner's statement that a purpose of the Regulation is to limit the amount of risk that a self-funded plan can cede to its stop-loss insurer. Such a limitation is aimed at preventing small employers from self-funding their plans in order to avoid state mandated benefits.

In arguing that the Regulation does not "relate to" an ERISA plan, defendant relies on the recent Supreme Court decision in *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* —— U.S. ——, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). But the facts of that case are distinguishable from those present here. The Supreme Court in *Travelers* criticized the broad definition of "relates to" in *Shaw,* and ultimately found that the surcharge system at issue in that case had no "connection with" employee benefit plans because it merely had an indirect economic effect on the relative costs of various health insurance packages available to plan administrators. *Id.* at ——, 115 S.Ct. at 1680. In the present case, however, the Regulation applies specifically to stop-loss insurance sold only to benefit plans. Here, there is a much greater connection between the Regulation and an ERISA benefit plan than existed under the more generally applicable surcharge system in *Travelers.* The Regulation at issue in this case thus goes well beyond the indirect effects of the surcharge system in *Travelers* and imposes sig-

nificant restrictions on plan administration and operation.

On the record here, this Court concludes that the Regulation was designed to affect employee benefit plans, that it therefore "relates to" an ERISA plan and that it is subject to preemption under § 1144(a).

### (b)
### *Is the Regulation "Saved" from Preemption?*

■ Because the Regulation relates to an employee benefit plan, it is preempted unless it falls within the "saving clause" and does not violate the "deemer clause." In general, a state law is protected by the "saving clause" if it "regulates insurance." 29 U.S.C. § 1144(b)(2)(A). However, this protection is lost if the law, in purporting to regulate insurance, deems a plan to be "an insurance company or other insurer ... or to be engaged in the business of insurance...." 29 U.S.C. § 1144(b)(2)(B). Although the parties have discussed in great detail the various tests to be applied by a court in determining whether a state law "regulates insurance," applicable case law indicates that because of the "deemer clause," the "saving clause" does not under the circumstances of this case protect the Regulation from preemption.

The Regulation "directly controls the terms of insurance contracts" by mandating, *inter alia,* minimum attachment points in order for a policy to be considered stop-loss insurance. *See FMC Corp.,* 498 U.S. at 61, 111 S.Ct. at 409. The Regulation therefore would typically fall within the protection of the "saving clause" and not be preempted, as long as it did not violate the "deemer clause." The Fourth Circuit, however, has held that "[a]lthough under the 'saving clause,' any state law regulating insurance policy terms withstands ERISA preemption, self-funded employee benefit plans are not covered by the clause." *Thompson,* 928 F.2d at 649, *citing FMC Corp.,* 498 U.S. at 61, 111 S.Ct. at 409; *Metropolitan Life,* 471 U.S. at 747, 105 S.Ct. at 2393; *Powell v. Chesapeake and Potomac Tel. Co. of Va.,* 780 F.2d 419, 423 (4th Cir.1985), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986). This Court therefore concludes that in this particular case the "saving clause" is inapplicable,

and the Regulation is preempted because of the interaction between the "saving clause" and the "deemer clause."

As stated by the Supreme Court,

We read the deemer clause to exempt self-funded ERISA plans from state laws that "regulat[e] insurance" within the meaning of the saving clause. By forbidding States to deem employee benefit plans "to be an insurance company or other insurer ... or to be engaged in the business of insurance," the deemer clause relieves plans from state laws "purporting to regulate insurance." As a result, self-funded ERISA plans are exempt from state regulation insofar as that regulation "relate[s] to" the plans. State laws directed toward the plans are pre-empted because they relate to an employee benefit plan but are not "saved" because they do not regulate insurance. State laws that directly regulate insurance are "saved" but do not reach self-funded employee benefit plans because the plans may not be deemed to be insurance companies, other insurers, or engaged in the business of insurance for purposes of such state laws.

*FMC Corp.,* 498 U.S. at 61, 111 S.Ct. at 409.

As the Supreme Court has recognized, fully insured plans are not subject to ERISA preemption.

On the other hand, employee benefit plans that are insured are subject to indirect state insurance regulation. An insurance company that insures a plan remains an insurer for purposes of state laws "purporting to regulate insurance" after application of the deemer clause. The insurance company is therefore not relieved from state insurance regulation. The ERISA plan is consequently bound by state insurance regulations insofar as they apply to the plan's insurer.

*Id.* As the Court explained, "the deemer clause makes clear that if a plan is insured, a State may regulate it indirectly through regulation of its insurer and its insurer's insurance contracts; if the plan is uninsured, the

State may not regulate it." [7] *Id.* at 64, 111 S.Ct. at 411. Plaintiffs assert that the self-funded plans of Client First, Moran, and Trio Metals are uninsured and therefore not subject to state regulation. This Court would agree.

Defendant argues that, because the plans at issue here purchase stop-loss insurance, they are subject to indirect regulation to the same extent as fully insured plans. According to defendant, the Regulation controls the terms of insurance policies, which is a permissible means of regulating an insured plan. *See id.* at 61, 111 S.Ct. at 409; *Metropolitan Life,* 471 U.S. at 746–47, 105 S.Ct. at 2392–93. Defendant focuses on the fact that the plans in fact purchase *insurance,* and argues that they must therefore be considered to be insured and subject to indirect regulation, whether or not they are primarily self-funded.

Whatever plausibility such an argument may have, the Court must reject it under applicable Fourth Circuit law. While it is true that the Client First, Moran, and Trio Metals plans purchase insurance, those plans are not considered "insured" plans as that term has been construed in ERISA cases. The Fourth Circuit has specifically held that "stop-loss insurance does not convert [a] self-funded employee benefit plan into an insured plan." *Thompson,* 928 F.2d at 653; *see also Tri–State Mach., Inc. v. Nationwide Life Ins. Co.,* 33 F.3d 309, 315 (4th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1175, 130 L.Ed.2d 1128 (1995); *United Food & Commercial Workers & Employers Arizona Health & Welfare Trust v. Pacyga,* 801 F.2d 1157, 1161–62 (9th Cir.1986). There is a distinction between a group health insurance policy purchased by a fully insured plan, whereby the participants receive benefit payments directly from the insurer, and a stop-loss insurance policy purchased by a self-funded or self-insured plan, whereby the plan itself receives the benefit payments. The purpose of stop-loss insurance is to protect the plan from catastrophic losses and not to provide health and accident insurance directly to employees. *Thompson,* 928 F.2d at 653. Accordingly, this Court concludes that the self-funded plans at issue in this case cannot be considered to be insured and subject to indirect State regulation for purposes of determining whether there is ERISA preemption.

In sum, the Regulation directly regulates insurance and therefore would be "saved." However, applying principles enunciated by the Supreme Court and the Fourth Circuit, the Regulation cannot reach the self-funded plans of plaintiffs Client First, Moran, and Trio Metals because those plans may not be deemed to be insurance companies or other insurers. *See FMC Corp.,* 498 U.S. at 61, 111 S.Ct. at 409. "State laws that directly regulate insurance are 'saved' but do not reach self-funded employee benefit plans because the plans may not be deemed to be insurance companies, other insurers, or engaged in the business of insurance for purposes of such state laws." *Id.* Moreover, the purchase of stop-loss insurance does not strip the plans of their self-funded status. *Thompson,* 928 F.2d at 652–53; *Tri–State Mach.,* 33 F.3d at 315.

For these reasons, the Court concludes that the State of Maryland may not regulate the self-funded and self-insured benefit plans at issue in this case by mandating minimum attachment points for stop-loss insurance. The Regulation is therefore preempted by ERISA.

## IV

### *Attorneys' Fees and Costs*

In their complaint, plaintiffs seek, *inter alia,* an award of attorneys' fees and costs under 29 U.S.C. § 1132(g)(1). That statute permits the court in its discretion to allow "a reasonable attorney's fee" and costs in an action brought by a participant, beneficiary, or fiduciary.

---

**7.** Although the Supreme Court has recognized that, for purposes of a preemption issue, there exists a distinction between insured and uninsured plans, "leaving the former open to indirect regulation while the latter are not ...", the Court has further observed that "[a]rguments as to the wisdom of these policy choices must be directed at Congress." *Metropolitan Life,* 471 U.S. at 747, 105 S.Ct. at 2393.

Neither plaintiffs nor defendant have addressed in their motions for summary judgment plaintiffs' claim for an award of attorneys' fees and costs. Only in plaintiffs' opposition to defendant's motion for summary judgment was this issue briefly discussed.

In *Reinking v. Philadelphia Am. Life Ins. Co.*, 910 F.2d 1210, 1217–18 (4th Cir.1990), the Fourth Circuit adopted a five factor test to be applied by a court in awarding attorneys' fees under ERISA. Since that test has not been adequately addressed by the parties in light of the circumstances here, the Court will not at this time rule on plaintiffs' request for an award of attorneys' fees. Plaintiffs should file an appropriate motion under Local Rule 109.2, seeking attorneys' fees and costs under § 1132(g)(i). That motion should then be briefed by the parties pursuant to Local Rule 105.2. The Court will later determine whether plaintiffs are entitled to such an award and, if so, the amount to be awarded.

## V

### Conclusion

For all the reasons stated, the Court will grant plaintiffs' motion for summary judgment as to Counts One and Two, and will dismiss, without prejudice, Count Three ·of the complaint. Defendant's motion for summary judgment will be denied. Plaintiffs should submit to the Court within 10 days a proposed declaratory judgment order. Plaintiffs should thereafter file an appropriate motion seeking attorneys' fees and costs pursuant to Local Rule 109.2.