Steven B. LARSEN, Insurance
Commissioner for the State
of Maryland

v.

CIGNA HEALTHCARE MID–
ATLANTIC, INC.

Connecticut General Life
Insurance Co., et al.

v.

Steven B. Larsen, Insurance
Commissioner for the
State of Maryland

Nos. CIV.A. WMN–02–155,
CIV.A. WMN–02–280.

United States District Court,
D. Maryland.

Aug. 2, 2002.

Christina Gerstung Beusch, Lisa Boylan Hall, Office of the Attorney General Maryland Insurance Administration, Baltimore, MD, for Plaintiff.

Derek Barnet Yarmis, Michael R. McCann, Funk and Bolton PA, Baltimore, MD, for Defendant.

## MEMORANDUM

NICKERSON, Senior District Judge.

In both of the above-captioned cases, CIGNA HealthCare Mid–Atlantic, Inc. (CIGNA) and its affiliate, Connecticut General Life Insurance Company (CGLI) claim that Maryland state laws regulating the review of health care benefits denials are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* Civil Action WMN–02–155 was removed by CIGNA to this Court from an administrative hearing at the Maryland Insurance Administration. Pending in that case are: the Insurance Commissioner's Motion to Remand (Paper No. 8); CIGNA's Motion for Partial Summary Judgment (Paper No. 12); and the Insurance Commissioner's Conditional Cross–Motion for Summary Judgment (Paper No. 15).

Civil Action WMN–02–280 is an action for declaratory judgment, brought by both CIGNA and CGLI. Pending in that case are: the Insurance Commissioner's Motion to Dismiss (Paper No. 5); CIGNA and CGLI's Motion for Summary Judgment (Paper No. 8); and the Insurance Commissioner's Conditional Cross–Motion for Summary Judgment (Paper No. 12).

All motions have been exhaustively briefed and are ripe for decision. The Court finds that no hearing is necessary, and that, for the reasons stated below, the Court will dismiss the declaratory judgment action and will remand the removal action to the Maryland Insurance Administration.

## I. BACKGROUND

The facts of both cases are undisputed by the parties. They are outlined in the parties' pleadings and are summarized as follows.[1]

Stephen B. Larsen is the Insurance Commissioner of Maryland. As such, he is the head of the Maryland Insurance Administration and exercises the powers and performs the duties specified in or reasonably implied by §§ 2–101, 2–103, and 2–108 of the Insurance Article. In furtherance of his duties, the Commissioner is authorized to bring a civil action in court and issue administrative orders. Md.Code Ann. Ins. Art. §§ 2–201, 2–204. The Commissioner may require a licensee to comply with the law, fulfill its contractual obligations, pay a penalty, pay restitution, or relinquish its license. *See, e.g.,* Ins. Art. §§ 4–113, 15–10A–04. Licensees may request a hearing from orders of the Commissioner and are entitled to judicial review of the Commissioner's final decisions. *Id.* at §§ 2–210, 2–215.

CIGNA and CGLI each hold a certificate of authority to operate as a health maintenance organization (HMO) in Maryland. The companies contract with various entities (known as "groups") which sponsor employee welfare benefit plans to provide, *inter alia,* medical care and benefits for plan members. CIGNA and CGLI (collectively, "the HMOs") perform "utilization review" in order to determine whether a proposed or delivered health care service covered under the plans is "medically necessary, appropriate, or efficient." *Id.* at § 15–10A–01. Under Maryland law, the HMOs may deny payment for covered services if they are not medically necessary, appropriate, or efficient. *Id.* In some cases, the HMOs contract with private re-

---

1. Because there are no disputes of fact in this case, most citations to the extensive record have been omitted from this discussion.

view agents to perform utilization review on their behalf. *See*, Complaint in WMN–02–280 at ¶ 15.

In the actions before the Court, CIGNA and CGLI challenge a body of laws that seek to regulate their utilization review activity. What follows is a summary of the challenged provisions.

In 1998, the Maryland General Assembly enacted a comprehensive statutory scheme that established standards for entities licensed to conduct utilization review, and requirements regarding the manner in which utilization review is to be conducted.[2] Md.Code Ann., Ins. Art. §§ 15–10A, 10B, 10C. The legislature also amended the Unfair Claim Settlement Practices Act, codified at Title 27, Subtitle 3, to conform that law to the newly enacted Appeals and Grievance Law. According to legislative history, the statutes were adopted in response to growing concerns that, "as managed care gains an increasing proportion of the health care delivery system," the ability of patients and providers "to contest decisions rendered by managed care plans" becomes jeopardized. *See*, Environmental Matters Committee Bill Analysis, House Bill 3, Jan. 28, 1997 (Ins. Commissioner's Mot. to Dismiss at Exh. 5).

The Appeals and Grievance Law, codified at Title 15, Subtitle 10A of the Maryland Insurance Article, establishes a procedure by which an individual entitled to health care benefits may protest a utilization review determination. Each HMO is required to establish an internal grievance process to handle such protests. Ins. Art. at § 15–10A–02. When an HMO renders a final "grievance decision" denying benefits, it must document that decision in writing and send written notice, within 5 working days of the decision, to the individual and any health care provider acting on the individual's behalf. The notice must clearly state the factual bases for the decision, and any specific criteria or standards on which the decision was based. *Id.* at § 15–10A–02(i)(2).

If, at the conclusion of the internal grievance process, the plan member is not satisfied with the HMO's decision, she may file a complaint with the Insurance Commissioner to initiate an external review process. *Id.* at § 15–10A–02(d). In reviewing the HMOs' determinations, the Commissioner may seek advice from an independent review organization or medical expert, in order to determine whether benefits were wrongfully denied. *Id.* at §§ 15–10A–03(d), 10A–05. The Commissioner then renders a final order, in which he may order the HMO to cease inappropriate practices, fulfill its contractual obligations, provide a health care service or payment that has been improperly denied, or take appropriate steps to restore its ability to provide covered services or benefits. Once the order is issued, all parties are given the opportunity to request an administrative hearing. *Id.* at § 15–10A–04(a).

The Private Review Agent Law, codified at Title 15, Subtitle 10B, requires entities performing utilization review to comply with certain procedural and substantive requirements. In order to be certified under the law, private review agents must submit information to the Commissioner, including: (1) specific criteria used to determine whether services are medically necessary; (2) an attestation that such cri-

---

**2.** The statutes are not limited to HMOs; they apply to "carriers" which are defined to include: "(1) an authorized insurer that provides health insurance in the State; (2) a nonprofit health service plan; (3) a health maintenance organization; (4) a dental plan organization; or (5) except for a managed care organization as defined in Title 15, Subtitle 1 of the Health–General Article, any other person that provides health benefit plans subject to regulation by the State."

teria are, inter alia, objective and clinically valid; (3) the qualifications of the individuals performing utilization review; and (4) policies and procedures for training those individuals. *Id.* at § 15–10B–05.

Finally, violations of the Appeals and Grievances Law and the Private Review Agent Law are now deemed to be prohibited practices under Maryland's Unfair Claim Settlement Practices Act. *Id.* at § 27–303(7) and (8); § 27–304(16) and (17). The Act sets forth various penalties and fines that may be imposed by the Commissioner for a violation of the Act. *Id.* at § 27–305.

The removal case now before this Court, Civil Action No. WMN–02–155, originated from a complaint filed with the Commissioner, alleging that CIGNA had improperly denied health care benefits to Brenda Hurley, a member of an employee benefit plan through her employer, BAE Systems North America, Inc. BAE Systems had entered into a contract with CIGNA, pursuant to which CIGNA agreed to arrange for provision of medical services to eligible plan members, and to provide utilization review of members' claims. On July 30, 2001, Ms. Hurley was admitted to Washington County Hospital for treatment of blunt trauma to her spleen and left kidney.[3] CIGNA initially approved coverage for the inpatient hospital services received by Ms. Hurley for July 30 and 31, 2001, but denied coverage for hospitalization on August 1 and 2. The hospital appealed to CIGNA, and CIGNA notified the hospital that it had approved the services rendered on August 1, but not those on August 2, 2001.

Then, the hospital filed a complaint, pursuant to the Appeals and Grievance Law, with the Maryland Insurance Administration (MIA), alleging that CIGNA had improperly denied benefits under the plan. The MIA then conducted an investigation, which included requesting documents and other information from CIGNA. The MIA also notified CIGNA that the case was being referred to an independent review organization. On December 17, 2001, the Commissioner entered an order against CIGNA, finding, *inter alia,* that the services had been medically necessary for Ms. Hurley, and that CIGNA's denial of benefits violated § 15–10A–04(c). CIGNA was ordered to "immediately authorize payment for the inpatient hospitalization . . .". Notice of Removal at ¶ 3. The order also stated that CIGNA's grievance decision letter did not comply with § 15–10A–02(i) in that it failed to state the specific criteria and standards on which the denial was based. Finally, pursuant to the Unfair Claim Settlement Practices Act, the Commissioner ordered that CIGNA pay an administrative penalty of $2,500 for the violation of the Appeals and Grievance Law.

On December 27, 2001, CIGNA demanded an administrative hearing on the Commissioner's order, asserting that the state laws sought to be enforced were preempted by ERISA and, therefore, unenforceable. In early January of 2002, the MIA informed CIGNA of several proposed hearing dates, and on January 15, 2002, CIGNA removed the proceeding to this Court. As grounds for removal, CIGNA claims that "the Order and the laws the Order seeks to enforce are preempted by ERISA." Notice of Removal at ¶ 8.

Shortly thereafter, on January 24, 2002, CIGNA and CGLI filed their Complaint in Civil Action No. WMN–02–280, seeking a declaratory judgment that ERISA preempts any Maryland law that requires CGLI or CIGNA to pay plan benefits that

---

**3.** Upon her admission to the hospital, Ms. Hurley signed a release authorizing the hospital to file a grievance or appeal in case the HMO decided a proposed or delivered service was not medically necessary. *See,* CIGNA's Opp. to Mot. to Remand at 5.

are provided through an employee welfare benefit plan, and that ERISA preempts any authority of the Insurance Commissioner to enforce such laws.

There are also related proceedings pending in Maryland state courts. First, there is an appeal and cross-appeal pending before the Maryland Court of Appeals, in *Connecticut General Life Ins. Co. v. Insurance Commissioner*, No. 98 (September Term, 2001). This appeal was taken from a judgment of the Circuit Court of Baltimore City, which reversed in part and affirmed in part a final order of the Insurance Commissioner. *Insurance Commissioner v. Connecticut General Life Insurance Co.*, Civil Action No. 24C–01002387 (Oct. 17, 2001). In particular, the circuit court found that ERISA preempted the Insurance Commissioner's authority to enforce state laws requiring CGLI to pay plan benefits. *Id.* The Court of Appeals granted certiorari on its own initiative, by-passing the intermediate appellate court. Oral argument took place on April 4, 2002.

Second, there is pending in the Circuit Court for Baltimore City a petition for judicial review from a final decision of the Commissioner involving two administrative orders, in which CGLI was found again to have violated the above-referenced state laws. The sole basis for CGLI's appeal from the orders is ERISA preemption.

## II. DISCUSSION

### 1. Motion to Remand Civil Action No. WMN–02–155

■ A civil action may be removed to a federal district court with original jurisdiction over that action. 28 U.S.C. § 1441. Original jurisdiction exists where the matter in controversy "arises under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In this case, the matter in controversy is the Commissioner's order finding CIGNA in violation of the various Maryland statutes discussed above, and ordering CIGNA to pay the benefits it had denied, along with an administrative penalty.[4] The Commissioner argues that this Court does not have jurisdiction over CIGNA's removal action because the Commissioner's order does not "arise under" federal law.

Generally, a cause of action arises under federal law only when the plaintiff's well-pleaded complaint-in this case, the Commissioner's order-raises an issue of federal law. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Certainly, on its face, the Commissioner's order contains no reference nor relation to federal law. Only state laws are cited and sought to be enforced. CIGNA contends, however, that the case is saved by a corollary to the well-pleaded complaint rule: the complete preemption doctrine.

■ The complete preemption doctrine recognizes that "Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life*, 481 U.S. at 63–64, 107 S.Ct. 1542. The doctrine essentially converts a state law action into one stating a federal claim, for purposes of jurisdiction. *See, Custer v. Sweeney*, 89 F.3d 1156 (4th Cir.1996). In *Metropolitan Life*, the Supreme Court held that a state law claim is completely preempted by

---

4. In his Motion to Remand, the Insurance Commissioner does not dispute that the MIA hearing may be considered a "state court" for purposes of removal. *See, Floeter v. C.W. Transp., Inc.* 597 F.2d 1100 (7th Cir.1979) (holding that functions, powers, and procedures of state tribunal will determine whether it can be considered a "state court" for removal purposes); *Volkswagen de Puerto Rico, Inc. v. Puerto Rico Labor Relations Bd.*, 454 F.2d 38 (1st Cir.1972).

ERISA, and thus removable, where it falls within the scope of ERISA's civil enforcement provisions, 29 U.S.C. § 1132(a). 481 U.S. at 64–66, 107 S.Ct. 1542. The Seventh Circuit has delineated three criteria for determining whether a claim falls within the scope of § 1132(a): (1) "whether the plaintiff is eligible to bring a claim under that section"; (2) "whether the plaintiff's cause of action falls within the scope of an ERISA provision that the plaintiff can enforce via § 502(a)"; and (3) "whether the plaintiff's state law claim cannot be resolved without an interpretation of the contract governed by federal law." *Moran v. Rush Prudential HMO, Inc.*, 230 F.3d 959, 967 (7th Cir.2000), *aff'd.*, —— U.S. ——, 122 S.Ct. 2151, 153 L.Ed.2d 375 (2002) (*citing Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1487 (7th Cir.1996)).

Whether CIGNA's removal case satisfies these criteria is not readily apparent. While the Insurance Commissioner (the "plaintiff" in the underlying state action) is ineligible to bring an ERISA action under § 1132(a), the plan member, Ms. Hurley, or the hospital, to whom Ms. Hurley assigned her rights, could have done so.[5] CIGNA argues that the Court ought to find Ms. Hurley and the hospital to be the real parties in interest, and therefore that the first criterion is satisfied. Such an approach, however, ignores the reality that the underlying case involves a state official enforcing a regulatory scheme-not simply private parties pursuing their rights. Moreover, it is doubtful whether the second criterion is satisfied. "Medical necessity" determinations, such as the one disputed in the Commissioner's order, have been characterized as "mixed decisions" concerning eligibility and treatment, and therefore outside the scope of fiduciary decisions enforceable under § 1132(a). *See,*

*Pegram v. Herdrich*, 530 U.S. 211, 237, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000); *see also Isaac v. Seabury & Smith, Inc.*, 2002 WL 1461710 (S.D.Ind. July 5, 2002) (discussing *Pegram* at length and differentiating between eligibility decisions, treatment decisions, and mixed decisions, in the context of ERISA complete preemption).

■ Whether or not complete preemption creates jurisdiction here, however, it is clear to the Court that CIGNA's removal of the administrative hearing has the practical effect of asking this Court to enjoin the Commissioner from enforcing the order, on the ground that the underlying state laws are preempted. *See, Samuels v. Mackell*, 401 U.S. 66, 72–73, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971) (recognizing that a declaratory judgment issued while state proceedings are pending has the same practical effect as a formal injunction). It is well-established that federal courts have jurisdiction over injunctions against state action that allegedly violated federal law. As the Supreme Court has explained in another case claiming ERISA preemption:

> It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights. A plaintiff who seeks injunctive relief from state regulation on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.

*Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (citations omitted). Therefore, because CIGNA's removal action essentially

---

**5.** A civil action to recover benefits or enforce rights under a plan may be brought pursuant to 29 U.S.C. § 1132(a) only by a plan participant or beneficiary.

seeks to enjoin the enforcement of the Commissioner's order on federal preemption grounds, this Court has jurisdiction over the case.

### 2. Motion to Dismiss Declaratory Judgment Action WMN–02–280

 The Declaratory Judgment Act, 28 U.S.C. § 2201, operates only to provide a federal remedy and "cannot be used to create federal jurisdiction where none existed." *McCorkle v. First Pennsylvania Banking & Trust, Co.*, 459 F.2d 243, 250 (4th Cir.1972). "Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court." *Public Service Commission of Utah v. Wycoff Co.*, 344 U.S. 237, 248, 73 S.Ct. 236, 97 L.Ed. 291 (1952). The Insurance Commissioner argues that Plaintiffs' declaratory judgment action (1) is brought to establish a defense, in anticipation of impending or threatened court action, and (2) does not present a federal question because any threatened or impending action by the Commissioner against CIGNA would be brought pursuant to state law. Plaintiffs CIGNA and CGLI maintain, however, that their action arises under federal law because it presents the affirmative question of whether the Maryland statutes are preempted and thus invalid.

The applicable body of law-that which governs federal jurisdiction over declaratory judgment actions asserting federal preemption of state law-does not provide an obvious answer to this problem. *See, Stone & Webster Engineering Corp. v. Ilsley*, 690 F.2d 323 (2nd Cir.1982) (discussing, at some length, the lack of clarity surrounding federal jurisdiction over declaratory judgment actions); *see also* Wright, Federal Courts § 18 (4th

Ed.1983). What is clear, however, is that federal courts have frequently exercised jurisdiction over actions seeking declaratory judgment that state laws are preempted by ERISA. *See, e.g., American Med. Sec., Inc. v. Bartlett*, 915 F.Supp. 740 (D.Md. 1996), *aff'd.*, 111 F.3d 358 (4th Cir.1997); *Associated Builders & Contractors, Inc. v. Foley*, 37 F.3d 945 (3d Cir.1994); *Self–Ins. Inst. of America, Inc. v. Korioth*, 993 F.2d 479 (5th Cir.1993); *Stone & Webster Eng'g Corp.*, 690 F.2d 323; *Hamilton Sundstrand Corp. v. Healey*, No. 01–C–50199, 2001 WL 1230671 (N.D.Ill. Oct. 12, 2001); *Hewlett–Packard Co. v. Diringer*, 42 F.Supp.2d 1038 (D.Col.1999).

The Insurance Commissioner attempts to distinguish some of these cases by pointing out that in several of them, the plaintiffs sought injunctive, as well as declaratory, relief, and thus that jurisdiction was proper under *Shaw v. Delta Air Lines, supra*. In the present case, while it is true that Plaintiffs do not seek to enjoin pending state actions, the practical result of their claims, if they were to succeed, would be to enjoin the Commissioner from enforcing the invalidated state laws. *See, Samuels*, 401 U.S. at 72–73, 91 S.Ct. 764. In other words, were Plaintiffs to prevail, they would not merely establish a defense to an anticipated action, but would succeed in invalidating the state laws prospectively. Moreover, there is authority for the proposition that a claim for injunctive relief is not necessary to create federal jurisdiction over declaratory judgment actions such as the one at bar. *See, Self–Insurance Institute of America, Inc. v. Korioth*, 993 F.2d 479, 483 (5th Cir.1993) (finding that, in a declaratory action asserting ERISA preemption, "we are not confronted with a well-pleaded complaint problem because a federal declaratory judgment action affirmatively brought to determine whether a state law is preempted presents a valid basis for federal question jurisdiction.")

(citations omitted). Accordingly, the Court finds jurisdiction over Plaintiffs' declaratory judgment action.

### 3. The Rooker–Feldman Doctrine

██ The *Rooker–Feldman* doctrine prohibits the United States District Court from sitting in direct review of state court decisions. *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). The Commissioner argues that the doctrine bars this Court's jurisdiction over the declaratory judgment action, because Plaintiffs essentially seek this Court's review of the decision of the Circuit Court for Baltimore City, which also considered the ERISA preemption issue. The doctrine, however, only applies where the injury alleged is from the state court decision itself. The Fourth Circuit has emphasized, for purposes of applying the *Rooker–Feldman* doctrine, the distinction between "actions seeking review of the state court decisions themselves and those cases challenging the constitutionality of the process by which the state court decisions resulted." *Jordahl v. Democratic Party of Virginia,* 122 F.3d 192, 202 (4th Cir.1997). Only the former are subject to the doctrine's jurisdictional bar. In their declaratory judgment action, Plaintiffs do not ask this Court to review the decisions of the state courts, but rather to review the validity of the state laws being enforced in the state courts. Accordingly, the *Rooker–Feldman* doctrine does not prohibit this Court from exercising jurisdiction.

### 4. Abstention

The Commissioner further argues that, even if jurisdiction exists over these two cases, the Court should abstain from considering the merits, pursuant to *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).[6] In *Younger,* the Supreme Court held that "interests of comity and federalism counsel federal courts to abstain from jurisdiction whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests." *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 237–38, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984).

At the outset, it is important to note that "abstention from the exercise of federal jurisdiction is the exception, not the rule." *Id.* at 236, 104 S.Ct. 2321. The doctrine has been described as "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959). The "limited nature" of Younger abstention "reinforces the preeminence of the federal system in certain areas of law." *Employers Resource Mgmt. Co., Inc. v. Shannon,* 65 F.3d 1126, 1134 (4th Cir.1995).

██ *Younger* abstention may be appropriate when three criteria are satisfied: (1) there is an ongoing state judicial proceeding; (2) the proceeding implicates im-

---

**6.** The Commissioner also mentions the *Burford* and *Brillhart* abstention doctrines, in passing, within his argument for *Younger* abstention. *See, Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942) (applicable where parallel state proceedings present unsettled issues of state law); *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) (applicable in cases involving difficult questions of state law where federal intervention into a complex regulatory scheme might disrupt state efforts to formulate a coherent policy in an area of particular local concern). As the Court does not find these two other doctrines applicable to the instant case, they will not be discussed in detail.

portant state interests; and (3) there is an adequate opportunity to raise federal claims in the state proceeding. *See, id.* at 1134. The doctrine applies to state administrative proceedings that are "judicial" in nature. *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986).

Turning to the parties' arguments, the Court will first consider abstention in the declaratory judgment action, WMN–02–280. The parties do not dispute that the first abstention criterion is satisfied. The cases pending in the Maryland Court of Appeals, the Circuit Court for Baltimore City, and, arguably, the administrative hearing that has been removed by CIGNA to this Court, all constitute ongoing state proceedings that were initiated before Plaintiffs filed the instant Complaint. Furthermore, the fact that one case has reached the appellate stage counsels for abstention. *See, Huffman v. Pursue, Ltd.,* 420 U.S. 592, 608, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (observing that, where state proceedings have reached an advanced stage, federal "intervention ... is if anything more highly duplicative, since an entire trial has already taken place, and it is also a direct aspersion on the capabilities and good faith of state appellate courts").

 Plaintiffs insist, however, that the ongoing state court proceedings do not implicate important state interests. Because the issues involved in the state cases are controlled by ERISA, Plaintiffs argue, federal interests outweigh the competing state interest in regulating the insurance and health care industries. In support of this argument, Plaintiffs point to Congress's intention that ERISA supersede conflicting state laws and regulations. *See, e.g., Employers Resource Mgmt. Co.,* 65 F.3d at 1136 (noting that, in the ERISA context, "the federal-state balance ... has been skewed sharply in favor of the feder-

al system"). Plaintiffs also cite case law from the Eighth and Ninth Circuit Courts of Appeals, which found that abstention is improper in the context of preemption, because there is no cognizable state interest in enforcing state laws that are preempted by federal law. *See, Champion Int'l Corp. v. Brown,* 731 F.2d 1406 (9th Cir.1984); *Bud Antle, Inc. v. Barbosa,* 45 F.3d 1261 (9th Cir.1994); *Southwestern Bell Tel. Co. v. Arkansas Pub. Serv. Comm'n,* 824 F.2d 672 (8th Cir.1987).

Precedent in this circuit, however, indicates that where there are parallel state court proceedings in which state officials are enforcing state law, abstention is appropriate-even where federal preemption is at issue. *See, Aluminum Company of America v. Utilities Comm'n of North Carolina,* 713 F.2d 1024 (4th Cir.1983) (where federal plaintiffs sought to enjoin an already-issued state order that was pending on appeal in the state courts, abstention was not inappropriate merely because federal plaintiff asserted preemption claim); *Employers Resource Mgmt. Co.,* 65 F.3d 1126 (refusing to create an exception to *Younger* based on party's assertion of an ERISA preemption challenge); *see also, Fuller v. Bartlett,* 894 F.Supp. 874 (D.Md.1995) (where plaintiffs sought declaratory judgment that state regulations were preempted by ERISA, *Younger* abstention appropriate even if plaintiffs could only raise preemption defense on appeal in state courts).

In *Fuller,* this Court observed that "states have a 'substantial' interest in the regulation of insurance" and concluded that the "importance of Maryland's interest in regulating insurance strongly favors abstention." *Id.* at 879 (*citing Charleston Area Medical Center Inc. v. Blue Cross and Blue Shield Mut. Inc.,* 6 F.3d 243, 250 n. 5 (4th Cir.1993)). Plaintiffs assert that this conclusion was incorrect, in light of

the strong federal interests behind ERISA. Plaintiffs have failed to back up their assertion, however, with any binding authority explaining how a claim of federal preemption undermines or negates a state's well-established interest in regulating matters traditionally within its police powers. Indeed, without overlooking ERISA's strong preemptive force, the Court finds it relevant that ERISA itself contains a clause "saving" from preemption those state laws which "regulate insurance." 29 U.S.C. § 1144(b)(2)(A).

Plaintiffs further contend that *Younger's* third criterion, that they have an adequate opportunity to raise their federal questions in the state proceedings, is not satisfied. Plaintiffs do not argue, nor can they, that the *substance* of their federal claims cannot be asserted in the state proceedings. Indeed, the *only* issue contested by CIGNA and CGLI in the MIA proceedings and the Maryland state courts is that of ERISA preemption-an issue upon which CGLI prevailed in the Circuit Court for Baltimore City. Plaintiffs do complain, however, that their inability to assert a claim for declaratory judgment in the state proceedings renders *Younger* abstention inappropriate.

It appears that Plaintiffs' reliance on the two cases cited in support of this argument is misplaced. In *Suggs v. Brannon,* 804 F.2d 274 (4th Cir.1986), the Fourth Circuit upheld the district court's decision to abstain from reaching the merits of the plaintiffs' claim for an injunction against ongoing state criminal proceedings. The court concluded, however, that the district court should not have abstained from hearing the plaintiff's § 1983 claims for damages relating to their pretrial detention, because such claims could not be made during the criminal prosecution in state court. *Id.* at 280. Unlike Plaintiffs in the present case, the plaintiffs in *Suggs* would have been unable to assert their constitutional claims for excessive bond and unconstitutional bail conditions in the state criminal proceedings. *Id. (citing Gerstein v. Pugh* 420 U.S. 103, 108 n. 9, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)). In contrast, CIGNA and CGLI have fully availed themselves of the opportunity to litigate the federal preemption issue in the state proceedings, and they have failed to show why they are entitled to a particular form of relief, namely, a federal declaratory judgment.[7]

Oddly, Plaintiffs' failure in this regard only seems highlighted by the second case they cite, *Cinema Blue of Charlotte, Inc. v. Gilchrist,* 887 F.2d 49 (4th Cir.1989). In that case, the Fourth Circuit found that the district court had erred in refusing to abstain under *Younger,* despite the fact that it was unclear exactly how, procedurally, the plaintiffs would be able to assert their constitutional claim in the state proceedings. The court observed that, "[t]hough we may not be sure exactly what procedural mechanism for doing so [asserting the federal claim] will be most appropriate, it is not necessary that we be. It suffices to be confident that it can be raised in some appropriate way, and that we are." *Id.* at 54, 91 S.Ct. 746.

In a final attempt to urge this Court to reach the preemption issue, Plaintiffs assert that one of two exceptions to the

---

**7.** Plaintiffs also argue that without a federal declaratory judgment, they will be irreparably harmed by being required to repeatedly litigate the preemption issue in state fora. In a footnote, Plaintiffs inform the Court that the Commissioner has not followed the Baltimore City court's ruling that the Commissioner's authority under the state laws to order the payment of plan benefits is preempted by ERISA. *See,* Pls.' Opp. to Mot. to Dismiss at 23 n. 7 *(citing* Memorandum and Final Order in MIA–477–9/01, dated Feb. 20, 2002). The Court notes, however, that the Commissioner will be bound by the forthcoming decision of the Maryland Court of Appeals.

*Younger* doctrine applies. The Supreme Court has summarized these exceptions as arising:

> where the District Court properly finds that the state proceeding is motivated by a desire to harass or is conducted in bad faith, or where the challenged statute is flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it.

*Huffman v. Pursue, Ltd.,* 420 U.S. at 611, 95 S.Ct. 1200.

No allegations of bad faith or harassment have been asserted by Plaintiffs. They argue, however, that the state laws at issue fit the second *Younger* exception, in that it is "readily apparent" that the laws are preempted by ERISA. Pls.' Opp. to Mot. to Dismiss at 26. The Court strongly disagrees with this bold assessment. Without delving into, much less deciding, the merits of Plaintiffs' preemption claim, the Court need only observe the current legal landscape to conclude that it is far from obvious whether Maryland's internal and external review laws are preempted. Very recently, the Supreme Court examined Illinois' independent review law, and concluded that the law (a) regulates insurance within the meaning of ERISA's saving clause, and (b) does not conflict with ERISA's civil enforcement scheme. *Rush Prudential HMO, Inc. v. Moran,* 536 U.S. 355, 122 S.Ct. 2151, 153 L.Ed.2d 375 (2002). In upholding the state law's validity, the Court recognized that numerous other states had crafted similar laws, and observed that "we do not believe that the mere fact that state independent review laws are likely to entail different procedures will impose burdens on plan administration that would threaten the object of 29 U.S.C. § 1132(a) ...." *Id.* at 2168 n. 11. On the same day it decided *Rush,* the Supreme Court vacated and remanded a Fifth Circuit case that had found

Texas's independent review law preempted by ERISA. *See, Corporate Health Ins., Inc. v. Texas Dept. of Ins.,* 215 F.3d 526 (5th Cir.2000), *vacated and remanded by,* — U.S. —, 122 S.Ct. 2617, 153 L.Ed.2d 800 (2002).

Certainly, Maryland's laws are not identical to Texas's or Illinois', and they may yet be found to present "procedures so elaborate, and burdens so onerous, that they might undermine § 1132(a)." *Rush,* at 2168 n. 11. Also, the Supreme Court did not consider the possible preemption of internal review laws, which are at issue here. It would seem, however, that in light of such recent support for similar state laws by the highest court in the land, Plaintiffs' assertion of "facially conclusive" preemption falls flat. Accordingly, no exception to the *Younger* doctrine is warranted.

Having concluded that, in accordance with the principles of comity and federalism, *Younger* abstention is appropriate in Plaintiffs' action for declaratory judgment, the Court faces the abstention question as to CIGNA's removal of the MIA hearing. CIGNA asserts that *Younger* abstention is inappropriate because, having removed the action, there is technically no longer an ongoing state proceeding. Assuming, *arguendo,* that this is true, it would be highly incongruous to abstain from reaching the merits of one case while reaching the same merits in another case between the same parties. The principles of comity and federalism espoused by the *Younger* doctrine would necessarily be undermined. Indeed, when Judge Payne of the Eastern District of Virginia faced a similar situation, he abstained in the action for declaratory and injunctive relief, and remanded the removal action back to the state administrative agency. *See, Employers Resource Mgmt. Co. v. Shannon,* 869 F.Supp. 398 (E.D.Va. 1994). The Fourth Circuit upheld his deci-

sion. 65 F.3d 1126. Finding this solution to be appropriate in the instant case, the Court will remand CIGNA's removal action to the Maryland Insurance Administration.

### III. CONCLUSION

For the foregoing reasons, the Court will grant the Insurance Commissioner's Motion to Dismiss WMN–02–280 and his Motion to Remand WMN–02–155. A separate order will issue.

### ORDER

Pursuant to the foregoing memorandum, and for the reasons stated therein, IT IS this day of August, 2002, by the United States District Court for the District of Maryland, hereby ORDERED:

1. That, in Civil Action WMN–02–155:

a. The Insurance Commissioner's Motion to Remand, Paper No. 8, is hereby GRANTED;

b. CIGNA's Motion for Partial Summary Judgment, Paper No. 12, is hereby DENIED as moot;

c. The Insurance Commissioner's Conditional Cross–Motion for Summary Judgment, Paper No. 15, is hereby DENIED as moot.

2. That, in Civil Action WMN–02–280:

a. The Insurance Commissioner's Motion to Dismiss, Paper No. 5, is hereby GRANTED;

b. CIGNA and CGLI's Motion for Summary Judgment, Paper No. 8, is hereby DENIED as moot;

c. The Insurance Commissioner's Conditional Cross–Motion for Summary Judgment, Paper No. 12, is hereby DENIED as moot;

d. This action is hereby CLOSED;

e. That any and all prior rulings made by this Court disposing of any claims against any parties are incorporated by reference herein and this order shall be deemed to be a final judgment within the meaning of Fed.R.Civ.P. 58; and

3. That the Clerk of the Court shall mail or transmit copies of the foregoing Memorandum and this Order to all counsel of record.